This suit involves an accident and resulting injuries sustained by Paul Gabel on the night of February 2, 1943, as he alighted or after he alighted from a bus of the Baton Rouge Bus Company at the intersection of North 22d Street and Willow Street in the City of Baton Rouge. It is claimed that plaintiff stepped into a hole on the shoulder of North 22d Street upon being discharged from the bus on which he was a paying passenger. It is further claimed that as the result of stepping into this hole he suffered an intertrochanteric fracture of the left hip which caused him to be hospitalized for a period of ten days, and being confined at home in bed for a period of some three months, followed by a convalescence *Page 65 
of more than four months. He claims loss of salary in the amount of $680, medical and hospital expenses in the amount of $222.15, and $5,000 for pain and suffering, and $5,000 for permanent injuries and disability, making a total claim for damages of $10,906.15, for which he sues the Baton Rouge Bus Company, a partnership, and the individual partners thereof, and the City of Baton Rouge, alleging that the accident was caused by the negligence of the bus driver in letting him off at an unsafe place, and the negligence of the City of Baton Rouge for permitting a hole 6' x 6' to exist on the shoulder of the street, containing mud and brickbats.
The defendant bus company, in its answer to plaintiff's petition, averred that the accident, with its alleged resulting injuries to the plaintiff, was due to no fault, carelessness or negligence whatsoever of the driver of the bus or anyone else for which the bus company was responsible, but was due solely and entirely to the gross carelessness and negligence of plaintiff.
The defendant City of Baton Rouge, in its answer, averred that the accident and alleged resulting injuries to plaintiff were due to no fault, carelessness or negligence whatsoever on the part of the City of Baton Rouge, its servants or employees, or anyone else for whom the City was responsible, but were due solely and entirely to the gross carelessness and negligence of plaintiff.
Both of these defendants, in the alternative, plead that if any negligence is found on their part, which is denied, that the plaintiff was thoroughly familiar with the conditions existing at the scene of the accident prior thereto, and that he therefore assumed the risk thereof, and contributed to his own accident and injuries, and which contributory negligence they especially plead in bar of plaintiff's recovery herein.
On trial of the case, the District Judge found for the defense, for oral reasons assigned, and dismissed plaintiff's suit at his costs. He has appealed.
Not having the benefit of a written opinion from the trial judge, we do not know what his finding of fact was, except that we can presume that he found that the defendants were free of negligence or that if there was any negligence on their part, the plaintiff was guilty of contributory negligence which bars his recovery.
According to plaintiff's own testimony at the outset of the trial, the bus stopped on the edge of the concrete on his signal, and he thereupon proceeded to step out, placing his right foot on the step and thereupon his left foot landed in the hole measuring about six feet by six feet and containing mud and brickbats, and he fell forward and stayed there until picked up by the bus driver and a soldier who was standing by the bus driver. Later in his testimony he implies that the bus driver might have started the bus before he stepped out of it, and that there was a possibility that he stumbled on the soldier's foot as he was stepping out.
There is no question that plaintiff did sustain the accident alleged and the injury to his left hip as alleged, but there is a serious question as to whether his fall occurred immediately upon alighting from the bus or after he had taken several steps after alighting from the bus in a safe position. It is shown by the evidence that he was well acquainted with the bus stop and had full knowledge that North 22d Street and the intersection of North 22d and Willow Streets were being remodeled and that at the bus stop there was a dirt shoulder which was muddy and that vehicles, such as busses, had, prior to the accident, gotten bogged on said shoulder, creating holes and ruts in the shoulder. In other words, the evidence is preponderant to the effect that he knew the "lay of the land" which was in his neighborhood. In so far as the City of Baton Rouge is concerned, the evidence shows that they had no notice of any dangerous situation which could exist in so far as citizens were concerned, and in so far as the bus company is concerned, the only negligence which could be attributed to it would be whether or not the bus driver discharged his passenger at a stop where he had to step into this dangerous hole or whether or not the bus driver discharged the passenger before stopping his bus and caused him to fall.
B.D. Smith, a fellow employee of plaintiff, who was riding with plaintiff prior to *Page 66 
his discharge from the bus, stated that as far as he knew the bus came to a full stop when Gabel was discharged therefrom, and that someone apparently informed the driver that Mr. Gabel had fallen down, and the bus, after being driven some 8 to 15 feet, stopped again, and the driver of the bus and the soldier thereupon picked up Mr. Gabel and placed him on the pavement next to the bus; that Mr. Gabel was muddy and pretty wet, could not stand on his left foot, and, on his request, the bus driver called an ambulance and had him taken to a hospital. This witness testified that "There was a narrow strip, of concrete between the water and the bus, just about wide enough for a man to walk on, just how wide I would not undertake to tell you. I walked down the concrete myself, and I was right beside the bus walking."
The bus driver, J.R. Clarke, called for cross-examination, testified that his bus was in proper working condition, that his windshield wiper was working, and his lights were working; and that although it was not raining at the time, it had been raining and that the weather was foggy or misty at the time they reached the intersection of North 22d Street and Willow Street; that the plaintiff pulled the cord to signal his desire to stop at that intersection, and that he thereupon stopped, and Mr. Gabel proceeded to make his exit; that the soldier had to step aside to let him by, but, in effect, did in no way obstruct his action in permitting him to leave the bus; and that when he saw that Gabel had gotten off, and that when everybody called "All clear", he proceeded to drive his bus in low gear and that the bus had started without the door being closed; that as he had proceeded a few feet the soldier told him that "The man that just got off is down", and that he thereupon immediately stopped his bus, and went out. Upon descending from his bus, he found that Gabel was lying in the mud hole on his face and that he and the soldier picked him up and he then went to the bus garage and called an ambulance. Upon being asked the specific question "When Mr. Gabel stepped down on the steps, did you start the bus before he was clear?" He answered: "I don't think I did, so far as that is concerned, because they hollered 'all clear' and I looked around and I did not see Mr. Gabel, but after. I got started, the soldier told me that he was down. I did not see Mr. Gabel actually clear after the door closed or anything like that."
This same witness, the bus driver, on June 26, 1945, after the case had been tried, made a statement, while he was in the East Louisiana State Hospital at Jackson, in which he in effect contradicts his testimony about not having started the bus until after Gabel had stepped out and the other passengers had hollered that all was clear. After making such statement, the note of evidence was reopened by the plaintiff, and the only explanation offered by the witness for the change in his testimony is that "I don't recall making a statement like that (that the man was off the bus before he started) or anybody asking me." He goes on further to say in his new testimony that he did not remember seeing Gabel walking away from the bus, "It was a bad night."
He was cross-examined with reference to a written statement which he made under date of February 3, 1943, in which he clearly sets forth that the bus was stopped and that Gabel was out of the bus before he started again, and also with reference to a transcript of the testimony which he had previously given, and does not deny the written statement of February 3, 1943, but merely explains it by saying, "That is the way they told me to fill it out and I had only been working there three weeks and I had never had any accident." He maintains that he made an attempt to see the attorney for the bus company, Mr. Brooks, in order to correct his testimony, but that he was unable to contact hm. In other words, this witness tried to impress the Court that his prior testimony to the effect that he had made a complete stop when Gabel was discharged from the bus was given either through lack of proper probing on the part of the attorney for plaintiff, or through influence on the part of someone connected with the bus company. The fact remains, however, that his first statement was given immediately after the accident, to-wit, on February 3, 1943, and there is no showing of any undue influence on him. *Page 67 
J.W. Hatcher, witness on behalf of defendant, testified that he was a claim adjuster for the bus company in February, 1943, and that the written report of February 3, 1943, from Clarke, was taken by him by questioning Clarke and being dictated to a stenographer; that he believes it as near correct as it could have been made.
Mr. Baucher Pierce testified that at the time of the accident he was a supervisor for the bus company and that at that time the instructions to bus operators demanded that they report an accident as quickly as possible, and that in said report they put in it just how the accident occurred. With reference to the report of Clarke in the Gabel accident, he denies having used any influence to report anything but the true facts.
Mr. R.A. Delaroderie, a man 73 years of age, Claim Adjuster for the Gulf States Utilities Company, testified that at the time of the accident he was Vice-president and Manager of the bus company, and that on or about July 6, 1945, in company with Joe Hatcher, Mr. Brooks (attorney for defendant bus company) and of Mr. Brooks' son, he saw Mr. Clarke and they had an interview with Mr. Clarke and the transcript of the testimony given previously, on November 9 and 10, 1944, by Clarke was read to him, and that Clarke said that the said testimony was correct, except that he, Clarke, said in his opinion Gabel's foot might have been in the door when he closed it. (Italics ours). This witness also testified as to Clarke's subsequent statement of June 26, 1945, in which he says: "I saw the driver of a bus for the Baton Rouge Bus Company on which Paul Gabel was a passenger and testified in his case. * * * I made a report of the accident and stated that I did not know how the accident occurred, but such is not correct. Mr. Gabel was hurt because I started the bus before he had cleared the doorway. This is directly opposed to what I testified to, but is actually what happened. I thought I would be involved if I testified otherwise, but the matter has been worrying me a great deal and I want the truth known. The old man did not walk away from the bus when the accident happened, he fell on the ground when I started the bus too soon." Witness Delaroderie, upon being asked "What was Clarke's statement as to the circumstances under which that statement was given and his condition?" He answered that he seemed to be very much concerned about this statement, the fact that he was in a very nervous condition; said the day or night before he had taken quite a number of nembutal tablets, and participated in drinking a quart of whiskey or some portions of it and was in a pretty shaky condition when Mr. Favrot (plaintiff's attorney) talked to him about this accident. He said that Mr. Favrot wrote the report but offered it to him to read, or asked him if he wanted to read it, and he said no, and the question was then asked him if it was read to him, and he said no, that he simply signed it. This witness states that on the day of the interview, July 6, 1945, Clarke was perfectly sober and calm.
The only other material evidence in the record, aside from the medical evidence showing the injury sustained by plaintiff, which injury is admitted, is the testimony of defense witnesses as follows:
Veda Castilaw testified that she was a passenger on the same bus with Gabel on the night of the accident, and that when he got off, the bus was completely stopped, and that when Gabel fell, the bus had moved only a short distance and stopped when the driver was notified that the passenger slipped and fell. She testified further that before falling he had walked about three steps; that she did not actually see him fall, but that there was sufficient light at the scene of the accident to see him walk.
Gloria Termini also testified that she was a passenger on the bus, and that the bus came to a complete stop at the intersection of Willow and North 22d streets at the time that plaintiff got out; that the bus was on the concrete slab when Gabel got out and that she saw him walk a few steps towards the back of the bus and he slipped and fell, and that the bus stopped after going a few feet.
In addition to the above testimony, the record contains the testimony of E.G. Blakewood, called by plaintiff, a qualified *Page 68 
Civil Engineer, who merely testified as to the situs of the accident, and the testimony of W.B. Roberts, who testified that he was the contractor for the building of the concrete slab on North 22d St., and also for the building of the intersection at North 22d Street and Willow Street. The last witness was called in warranty by the City of Baton Rouge, but with reservation of the city's rights, the call in warranty was released, and it is clearly shown by testimony that he had no responsibility for the shoulder whereon the accident occurred. From Mr. Blakewood's testimony it does not appear that the City had any notice of the situation existing which could be reasonably expected to be dangerous to the citizens.
From a review of the record, it would appear that this unfortunate accident cannot be held to have been caused by the negligence of either the City of Baton Rouge or the Baton Rouge Bus Company, for the reason that the preponderance of the evidence is to the effect that the bus was driven in its customary manner and was stopped at the request of plaintiff, at its customary place, and that plaintiff himself, being fully acquainted with the situation, and with the terrain, was at least guilty of contributory negligence which was a proximate cause of the accident. He was fully cognizant of the fact that this intersection was being remodeled because this was the place where every day he was discharged from the bus. The only close question in the case in our opinion is whether or not the bus driver either started the bus before plaintiff had gotten off, or discharged plaintiff right next to the mud hole so that plaintiff was forced to step into the hole. As to whether or not the bus driver started the bus before plaintiff got off, even though the bus driver contradicts himself on that point, the evidence of all the other passengers is to the effect that he came to a complete stop. As to whether or not plaintiff was discharged at a safe place, it is to be noted that the other passengers all testified that he was let off on the concrete slab or at least at a safe place and that he took a few steps before falling in the hole, of which he had full notice.
In view of the circumstances brought out by the evidence, it is our opinion that there was no negligence on the part of the defendants in this case, or at least that there was contributory negligence on the part of plaintiff barring his recovery, and that therefore the judgment appealed from is correct.
For these reasons, the judgment of the lower court is affirmed.